# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| AIR CENTER HELICOPTERS, INC., § § Plaintiff, § § v. § § STARLITE INVESTMENTS IRELAND § LIMITED, et al., § § Defendants. § | Civil Action No. 4:18-cv-00599-O |

## OPINION AND ORDER

Before the Court are Plaintiff Air Center Helicopters, Inc.'s ("ACHI") Motion to Vacate Arbitration Order (ECF No. 5), filed July 23, 2018; ACHI's Motion for Preliminary Injunction (ECF No. 6), filed the same day; Defendants Starlite Investments Ireland Limited, Starlite Aviation Ireland Limited, Starlite Aviation Operations Limited, Heavly Lift Charters Limited, Starlite Maintenance Johannesburg (pty) Ltd., and SA Aeronautics Limited's (collectively, "Defendants" or "Starlite") Responses (ECF Nos. 17–18); and ACHI's Replies (ECF Nos. 22–23).

As an initial matter, the Court questions its own jurisdiction over the motions at issue here. This case involves parties to an ongoing arbitration proceeding, and the parties disagreement over a July 12, 2018 Order Regarding Emergency and Interim Relief (the "Interim Order"). *See generally* Pet., ECF No. 1; ACHI Mot. Vacate, Ex. A (Interim Order), ECF No. 5-3 [hereinafter "Interim Order"]. The Interim Order, issued by arbitrator Mark A. Calhoun after emergency hearings held on June 29 and July 3, 2018, states that Starlite's application for emergency and interim relief is granted in part "pending final resolution in arbitration or until further interim orders from the tribunal." Interim Order 7, ECF No. 5-3. District courts do have jurisdiction to review and vacate final arbitration orders under specific instances outlined in the United States

Arbitration Act (the "FAA"). *See* 9 U.S.C. § 10. But the arbitrator's order here does not purport to be final or adjudicate all the claims before the tribunal. *See* Interim Order 1, ECF No. 5-3 ("[I]n an effort to temporarily resolve disputes . . . until an arbitration on the merits can be completed."). Circuit courts have made clear that "a district court does not have the power to review an interlocutory ruling by an arbitration panel." *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir. 1980) (citing *Luff v. Ryan*, 128 F. Supp. 105, 108–09 (D.D.C. 1955) & *Travelers Ins. Co. v. Davis*, 490 F.2d 536, 541–42 (3d Cir. 1974)); *Folse v. Richard Wolf Medical Instruments Corp.*, 56 F.3d 603, 605 (5th Cir. 1995) ("By its own terms, § 10 authorizes court action only after a final award is made by the arbitrator."). The parties did not brief the issue of the Court's jurisdiction to review the arbitrator's Interim Order. ACHI, as the party asserting this Court's jurisdiction, is **ORDERED** to file a brief on this issue no later than August 6, 2018. Starlite may respond on or before August 10, 2018.

The Court's opinion today is subject to its later determination on the jurisdictional issue. That being said, and for the reasons stated below, the Court finds that ACHI's Motion to Vacate Arbitration Order (ECF No. 5) and ACHI's Motion for Preliminary Injunction (ECF No. 6) should be **DENIED**.

I.  **BACKGROUND**

The following facts are taken from ACHI's petition and motion to vacate (ECF Nos. 1 & 5). ACHI is a helicopter manufacturer based in Fort Worth, Texas. Approximately ninety percent of ACHI's business is government contracts. Indeed, ACHI has contracted with the United States Department of Defense for more than thirty years. ACHI employees work on classified projects and require high-level security clearances and Federal Aviation Administration certifications. ACHI sought to replace Erickson Helicopters, Inc. ("Erickson") when Erickson went bankrupt.

Starlite is a collection of companies based primarily in Ireland and South Africa. Starlite's companies have much less experience than ACHI in contracting with the U.S. government, but Starlite has previously worked as a subcontractor with Erickson. Because of security restrictions and its lack of experience, Starlite struggles to contract with the U.S. government and seeks to subcontract instead. Starlite proposed to have ACHI replace Erickson as a subcontractor with Fluor Corporation ("Fluor"), the prime contractor with the United States Army, with Starlite acting as a subcontractor to ACHI.

ACHI submitted a proposal to Fluor seeking to handle helicopter work supporting U.S. military operations in Afghanistan. This proposal listed Starlite as one of the subcontractors of ACHI. Fluor awarded the contract to ACHI in November 2016, with the contract lasting from January 1, 2017, for a 6-month base period and including three one-year option periods to follow. Following the award of this contract, ACHI and Starlite entered into a series of contracts to facilitate the performance of the contract with Fluor. This contract included a lease agreement for each of the four aircraft required under the Fluor contract, three Operational and Maintenance Lease Agreements, an Aircraft Lease, and eight "Side Letters." ACHI, in return for use of the helicopters, would pay Starlite $75,000.00 per month per helicopter, $20,000.00 per month per helicopter for insurance, and $3,100.00 for each blade hour (i.e., from engine start-up to shut-down) on each aircraft. The helicopters Starlite provided were forty years old at the time. The Fluor contract required helicopters to be twenty years' old or less, but Fluor temporarily waived that requirement.

Fluor decided to discontinue waiving the age requirement of the helicopters on June 5, 2018, and notified ACHI that it would need the appropriately aged helicopters by July 30, 2018. Accordingly, the helicopters provided by Starlite would no longer be complaint with ACHI's

contract with Fluor. ACHI presented the opportunity to Starlite to provide the new helicopters by July 30. Starlite threatened litigation and stated that they could provide alternative aircraft at the same price, but did not say when the aircraft would be available. ACHI informed Starlite that their aircraft was not being offered at a fair market price, and requested that Starlite drop their prices. Starlite refused to provide any commitment on price or dates of availability concerning the alternative aircraft.

On June 25, 2018, Starlite filed a Demand for Arbitration, alleging breach of contract, anticipatory breach of contract, and other claims. Starlite also filed an Application for Emergency Relief and Interim Relief. The parties agreed to continue with the contract until July 30, 2018, but did not agree on any performance into August. On July 9, 2018, a hearing was held before an arbitrator and that arbitrator concluded that Starlite had demonstrated a probable right to the relief sought on its breach of contract, anticipatory breach of contract, duty of good faith and fair dealing, and tortious interference claims. The arbitrator issued his Interim Order on July 12, 2018, granting specific performance of the existing agreements between the parties and directing the parties to take steps maintain the status quo until such time that the full dispute could be decided on the merits. ACHI filed its petition, motion to vacate, and motion for preliminary injunction in this court on July 23, 2018. The motions are ripe for review.

## II. LEGAL STANDARDS

### A. Motion to Vacate Arbitration Award

Judicial review of an arbitration award is "exceedingly deferential." *Petrofac, Inc. v. DynMcDermott Petroleum Ops. Co.,* 687 F.3d 671, 674 (5th Cir. 2012) (quoting *Apache Bohai Corp. LDC v. Texaco China BV,* 480 F.3d 397, 401 (5th Cir. 2007)). Vacatur is permitted only on

the narrow grounds described in the FAA.[1] *See Citigroup Global Mkts., Inc. v. Bacon,* 562 F.3d 349, 358 (5th Cir. 2009). The FAA provides four statutory grounds where a district court should vacate an arbitration award: where (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption in the arbitrators, or either of them; (3) the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10(a)(1)–(4).

Here, ACHI alleges that the arbitrator (1) imperfectly executed his powers by entering an indefinite order; (2) exceeded his powers by manifestly disregarding settled law in relying on an implied-in-fact contract theory; and (3) exceeded his powers by granting relief to a non-party. ACHI Mot. Vacate 9, ECF No. 5. Where arbitrators act "contrary to express contractual provisions," they have exceeded their powers. *Delta Queen Steamboat Co. v. AFL–CIO*, 889 F.2d 599, 604 (5th Cir. 1989). Where limitations on the arbitrator's authority are uncertain or ambiguous, however, "they will be construed narrowly." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.,* 358 F.3d 337, 343 (5th Cir. 2004). "A reviewing court examining whether arbitrators exceeded their powers must resolve all doubts in favor of arbitration." *Id.*

### B. Motion for Preliminary Injunction

---

[1] The Court understands that the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") governs the underlying arbitration proceeding. But, as ACHI argues and Starlite concedes, the Court should apply FAA grounds for vacatur to this case. *See Saipem Am., Inc. v. Wellington Underwriting Agencies, Ltd.*, No. 4:07-cv-03080, 2008 WL 2276210 (S.D. Tex. Mar. 18, 2008) (collecting cases), *aff'd*, 335 F. App'x 377 (5th Cir. 2009).

A preliminary injunction is an "extraordinary remedy" and only will be granted if the movant carries its burden on all four requirements. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). The Court may issue a preliminary injunction if the movant establishes (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) the balance of hardships weighs in the movant's favor; and (4) the issuance of the preliminary injunction will not disserve the public interest. *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 582 (5th Cir. 2013); *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011); *see also* FED. R. CIV. P. 65; *Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985) ("The decision to grant or deny a preliminary injunction is discretionary with the district court."). The movant must make a clear showing that the injunction is warranted, and the issuance of a preliminary injunction "is to be treated as the exception rather than the rule." *Miss. Power & Light Co.*, 760 F.2d at 621.

### III. ANALYSIS

#### A. ACHI's Motion to Vacate

First, ACHI moves to vacate the portions of the Interim Order that it believes are indefinite and "create[ ] catastrophic uncertainty." ACHI Mot. Vacate 12, ECF No. 5. Specifically, ACHI points to what it regards as conflicting language regarding the required payment terms between the parties for performance of their respective obligations. Paragraph 2(c) of the Interim Order states:

> 2. Specific performance is GRANTED and ACHI is ORDERED to maintain the status quo by: . . . (c) paying Starlite for performance starting in August 2018 through a decision on the merits, or further interim orders from the tribunal, pursuant to the parties' existing payment terms, namely: the contract payment made by Fluor to ACHI less ACHI's reported direct costs, capped lump sum indirect cost amount, and ACHI's fixed management fee.

The allegedly conflicting provision of the Interim Order, Paragraph 4(e) states:

> 4. ACHI is ORDERED to pay Starlite pursuant to ACHI's agreement in its email dated July 4, 2018: . . . (e) Compensation for performance rendered in and after August 2018 under Option 2 of the Fluor Contract shall be in an amount agreed to by the parties or an amount adjudicated to be "commercially reasonable."

ACHI argues that these two provisions cannot be read together because they "impose two completely different payment schemes on ACHI." ACHI Mot. Vacate 12, ECF No. 5. Starlite responds that "these provisions are . . . complimentary, not contradictory" because while Paragraph 2(c) orders ACHI to continue paying Starlite for performance under the parties' existing payment terms, Paragraph 4(e) "allows for the possibility that, for performance in and after August 2018, the parties could mutually agree to different payment terms before the [arbitration panel] adjudicated the merits of the dispute . . . ." Starlite Resp. Mot. Vacate 8, ECF No. 18-1. The Court agrees with Starlite that these two provisions of the Interim Order are not in conflict. Paragraph 2(c), requiring ACHI to pay Starlite "for performance starting August 2018 through a decision on the merits . . . pursuant to the *parties' existing* payment terms," essentially says the same thing as Paragraph 4(e), which requires ACHI to pay Starlite "Compensation for performance rendered . . . *in an amount agreed to by the parties* or an amount adjudicated to be "commercially reasonable." Interim Order 7–8, ECF No. 5-3 (emphasis added). The parties existing payment terms are whatever their current agreement states, but the Interim Order allows those payment terms to be modified by mutual agreement or by a final adjudication. If that happens, the newly amended payment terms will then become the "parties' existing payment terms" and control the status quo.

ACHI next argues the Interim Order is "irreconcilably contradictory about which party— ACHI or Starlite—must provide aircraft to service the Flour contract." ACHI Mot. Vacate 13, ECF No. 5-1. ACHI cites dicta from the arbitrator's factual findings—"In the interim, compliance with

the Fluor requests for newer compliant aircraft . . . can be timely met by [Starlite] or [ACHI]."—to identify an apparent conflict in the Interim Order's language.

Here, the language of the Interim Order's mandate is clear; Paragraph 3 states that it is Starlite who is supposed to provide the compliant aircraft by the deadline of July 30, 2018, or at a later time if that can be negotiated with Fluor. *See* Interim Order 7, ECF No. 5-3. It may be true that Starlite cannot provide compliant aircraft as required by the Interim Order, but that does not make the Interim Order unclear or indefinite. The Court does not read the Interim Order as requiring ACHI to deliver any helicopter pursuant to the parties existing agreements. Instead, the Interim Order requires ACHI to pay Starlite upon its *performance*. *See* Interim Order 7, 8, ECF No. 5-3 ("ACHI is ORDERED to . . . pay[ ] Starlite for *performance*" & "Compensation for *performance rendered* in and after August 2018") (emphasis added)). The Interim Order does not require ACHI to pay Starlite if it does not perform, not does it require ACHI to deliver helicopters to Fluor. ACHI may choose to deliver compliant aircraft to Fluor to preserves its relationship with Fluor, but the Interim Order does not require it. This finding, contrary to ACHI's assertions, does not subject ACHI to a situation where it will double-pay for the same aircraft. If Starlite provides the compliant aircraft, *i.e.* renders performance, the Interim Order requires that ACHI pay Starlite. Interim Order 7, ECF No. 5-3. If Starlite fails to deliver the compliant aircraft in the time provided, then that is not *performance rendered*, and the Interim Order does not require ACHI to pay Starlite. *Id.*

This is not a case where the arbitrator acted "contrary to express contractual provisions." *Delta Queen*, 889 F.2d at 604. Instead, it appears from the record that the arbitrator's Interim Order is in alignment with the existing agreements between the parties.[2] The issue of whether Starlite

---

[2] The dicta that ACHI takes issue with, cited above, is not part of the arbitrator's mandate in this case. The Interim Order is split into two sections—6 pages of procedural history, analysis, and reasoning, followed

may or may not be able to actually perform its obligations (as stated in its agreements and the Interim Order) is not properly before the Court because the Court is tasked with analyzing the arbitrator's actions, not the parties. *See supra* Part II.A; 9 U.S.C. § 10(a). Certainly if Starlite failed to deliver a compliant aircraft by the date required by Fluor, whether that be July 30, 2018 or later, ACHI would be able to assert or amend a breach claim in the arbitration proceeding. For the foregoing reasons, the Court finds that the Interim Order is not so indefinite as to require vacatur.

Next, ACHI argues the arbitrator exceeded his powers by granting Starlite relief under an implied-in-fact contract theory. *See* ACHI Mot. Vacate 15, ECF No. 5-1. ACHI states "the arbitrator exceeded his powers by acting with manifest disregard of the law" because the parties have a valid express contract and an express contract cannot co-exist with an implied contract. *Id.* at 15–16. Manifest disregard itself is not an independent ground for vacatur under the FAA, *see Citigroup Global Markets, Inc. v. Bacon*, 562 F.3d 349, 355 (5th Cir. 2009), but can fall under the "imperfect execution of powers" ground for vacatur found in 9 U.S.C. § 10(a)(4). *See McVay v. Halliburton Energy Servs., Inc.*, 608 Fed. App'x 222, 225 (5th Cir. 2015). Here, the Interim Order's findings do not rise to the level of manifest disregard for the law. The Interim Order noted that the written contracts at issue are only between ACHI and Starlite Aviation Operations Limited ("SAOL"), and that evidence in the record at the arbitration proceeding that agreements between ACHI and other Starlite entities (named as defendants here) existed based on meeting of the minds for "logistical support" "that was separate and apart from and in addition to" the written agreements between ACHI and SAOL. Interim Order 4, ECF No. 5-3. It is possible for there to be an implied contract between ACHI and a Starlite entity (or several Starlite entities) that does not

---

by 2 pages under the heading "Order" where the arbitrator "ordered, adjudged, and decreed" what each party was to do. *See generally* Interim Order, ECF No. 5-3. The standard with which the Court views the arbitrator's findings is "exceedingly deferential" and any perceived inconsistency here between the facts and the findings does not come close to satisfying the vacatur standard. *Petrofac, Inc.*, 687 F.3d at 674.

involve SAOL. ACHI has not met its burden here to show that the arbitrator "appreciate[d] the existence of a clearly governing principle but decide[d] to ignore or pay no attention to it" or that enforcement of this finding will cause "significant injustice" to ACHI. *Prestige Ford v. Ford Dealer Computer Servs., Inc.*, 324 F.3d 391, 395 (5th Cir. 2003)). As noted above, the factual findings made by the arbitrator obviously influenced his reasoning, but they are not part of the mandate that this Court is asked to vacate or confirm. *See supra* note 1.

Lastly, ACHI moves to vacate the Interim Order's provision prohibiting ACHI from "enticing [Crew Resources International ("CRI")] employees from resigning with CRI to join ACHI. Interim Order 8, ECF No. 5-3. ACHI argues that this command by the arbitrator exceeded his powers because "an arbitration panel may not determine the rights or obligations of non-parties to the arbitration." ACHI Mot. Vacate 18, ECF No. 5-1 (citing *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 846 (6th Cir. 2003). But the Interim Order does not determine the rights or obligations of CRI, rather it determines the rights and obligations of ACHI regarding its relationship with Starlite. There is no dispute that arbitrators have authority to examine claims based on a contract (*e.g.*, breach of the duty of good faith and fair dealing and tortious interference) and issue injunctions where appropriate. The Court understands the Interim Order to do just that. *See* Interim Order 5, 8, ECF No. 5-3 (recognizing that Starlite has presented sufficient evidence of ACHI's breach of good faith and fair dealing where nineteen CRI employees resigned and joined ACHI, and ordering injunction).

Based on all of the above, the Court determines that ACHI has not met its high burden to show that the arbitrator imperfectly executed or exceeded his powers in the Interim Order. The Court finds that ACHI is not entitled to vacatur of the Interim Order and **DENIES** its motion (ECF No. 5).

### B. ACHI's Motion for Preliminary Injunction

ACHI moves the Court to enter a preliminary injunction staying the Interim Order and "prohibiting Starlite from interfering with ACHI's performance and provision of fully compliant aircraft for the duration of Option Period 2." ACHI Mot. Prelim. Inj. 8, ECF No. 6. The first element that ACHI bears the burden to prove in seeking a preliminary injunction is its likelihood of success on the merits. *Daniels Health*, 710 F.3d at 582. ACHI's motion for injunction relies on a condition precedent that—because of the Court's decision in *supra* Part III.A—does not exist here, namely, a granting of ACHI's motion to vacate the arbitration order. See ACHI Mot. Prelim. Inj. 8, ECF No. 6 ("For the reasons explained in ACHI's concurrently filed Petition and Motion to Vacate Arbitration Award, ACHI has shown a substantial likelihood of success on the merits."). Because the Court is of the opinion that ACHI's motion to vacate should be denied, ACHI cannot show a likelihood of success on the merits regarding its petition, and ACHI's motion for preliminary injunction must necessarily be **DENIED**.

### C. Starlite's Cross Motion for Confirmation of the Award

Starlite moves the Court to confirm the arbitrator's Interim Order in the event that the Court denies ACHI's motion to vacate. *See* Starlite Resp. Mot. Vacate 13–14, ECF No. 18-1 (citing *Genoa Schiffahrtsgesellschaft mbH & Cie KG*, 783 F.3d 1010, 1015 (5th Cir. 2015)). But because the Court has not yet decided its jurisdiction to hear the case, see *supra*, the Court **DEFERS** ruling on the confirmation of the award.

## IV. CONCLUSION

For the reasons stated above, the Court finds, subject to its forthcoming determination on its jurisdiction to issue this order, that ACHI's Motion to Vacate (ECF No. 5) and ACHI's Motion for Preliminary Injunction (ECF No. 6) should be **DENIED.**

**SO ORDERED** on this **30th day of July, 2018**.

_Reed O'Connor_
**UNITED STATES DISTRICT JUDGE**